# SUPREME JUDICIAL COURT

## JANUARY TERM 1863, AT BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, CHIEF JUSTICE.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. PLINY MERRICK, ⎫ JUSTICES.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN,

---

## MIDDLESEX COUNTY.

### MELZAR P. DELANO v. GEORGE W. WILD & others.

A voluntary association was formed for the purpose of creating a fund, to be vested in trustees, by the payment of entrance fees, monthly instalments on shares subscribed for and held by its members, fines and investments of the sums received, with the provision that when by these means the funds should have accumulated so as to amount to $500 upon each share subscribed for and still held by members, they should be divided amongst the holders of such shares *pro rata*, and the association dissolved. A member of the association who had subscribed for shares surrendered the same, and all his right to receive the said sum of $500, to the company, upon receiving a less sum than $500, paid to him by the association in advance, for which he bound himself to pay interest, in addition to the sums due from him for his monthly instalments, until the dissolution of the company. Under this agreement, he paid to the trustees of the association, in monthly dues, fines, interest, &c. a sum exceeding the whole amount received by him from the association as an advance, with interest thereon. *Held*, that he is not entitled, under Gen. Sts. *c.* 53, ¿ 5, to recover, in an action against the persons who are acting as trustees for the time being, any portion of the sums so paid by him, as usurious.

Delano *v.* Wild & others.

CONTRACT brought under Gen. Sts. c. 53, § 5, to recover back threefold the amount of unlawful interest paid by the plaintiff. The action was brought against the present and certain of the past trustees of the Medford Mutual Fund and Loan Association. This association was organized under articles substantially the same with those of the Merrimack Mutual Loan Fund Association, which are copied in *Merrill* v. *McIntire*, 13 Gray, 158, *n*; articles 10, 14, 15, 18 and 24 in this association corresponding to articles 9, 13, 14, 17 and 23, respectively, as there copied. Upon agreed facts, which sufficiently appear in the opinion, judgment was rendered in the superior court for the plaintiff, and the defendants appealed to this court.

This case was argued in January 1862.

*E. C. Baker*, for the plaintiff.

*J. Q. A. Griffin*, for the defendants.

MERRICK, J This is an action of contract, to recover threefold the amount of usurious interest alleged to have been received by the defendants upon the loan of money to the plaintiff. In their answer they deny that any unlawful interest was received or taken from the plaintiff; and they affirm that in their dealings with him they did nothing on their own account, but acted in all things exclusively for and as the agents and officers of the Medford Mutual Fund and Loan Association.

All the questions in controversy between the parties are submitted to the determination of the court upon an agreed statement of facts. From this it appears that said association is a voluntary and unincorporated company, formed and established in February 1854, under written articles of association, signed by all persons who then were or afterwards became members of it. It then commenced and has ever since continued to transact business under these articles. In March 1856 the plaintiff became a member of the company, signed the articles, and subscribed for and took nineteen shares of the association. And he thereby assumed and agreed to pay to its proper officers the prescribed entrance fee upon each of those shares, and also all the monthly dues which had then accrued and which should afterwards become due upon them. On the same day when he

thus became a member, he bid off, at a sale of the funds of the association, in pursuance of the provisions in art. 14, nineteen shares at a discount of three hundred and five dollars from the estimated ultimate value of each share, which was fixed at five hundred dollars. This entitled him to receive, upon executing the proper instruments and giving the required security, one hundred and ninety-five dollars on each share, amounting in the whole to thirty-seven hundred and five dollars.

The plaintiff thereupon gave to the defendants, Wild, Sampson and Hall, as trustees of the association, a bond in the penal sum of four thousand dollars, the condition of which was, that he should pay to them or to their successors in said trust the sum of $56.53 monthly, and all fines duly imposed upon him, until the termination of the association. At the same time he conveyed to them in mortgage by his deed of that date certain real estate to secure the performance of the condition of his bond; and the deed contained a power of attorney, authorizing the mortgagees to enter upon and sell the mortgaged premises upon default of the mortgagor to make the stipulated payments. Upon giving this bond and mortgage, the plaintiff received the sum of $2612.73 of the company in money, and the balance of said sum of $3705 was by his consent and agreement applied to the payment of said entrance fees and monthly dues which had then accrued and become due upon said nineteen shares, and to the payment also of a small claim for interest, respecting the validity of which no question has been raised. In this manner the plaintiff received of the company and availed himself of the entire sum of $3705, to which, under the purchase of said funds or shares as above mentioned, he became entitled. He subsequently made several payments in performance of the condition of his bond, but having eventually failed to make other payments required by it, the defendants, Hall, Thomas and Lawrence, who had in the mean time succeeded to Wild, Sampson and Hall in their office of trustees, for breach of the condition of the deed, entered upon and took possession of the mortgaged premises, and made sale of the same, in pursuance of the power given them therein for that purpose, for the sum

of twenty-four hundred and ten dollars. The company claim to retain the whole of this sum in satisfaction of the remaining alleged indebtedness to them.

These facts, considered in connection with the agreement of the members of the company, as expressed in their " Articles of Association," by which their respective rights, privileges and obligations are defined and limited, do not show that the transaction between the parties to this suit was in violation of any of the provisions of the statute by which the rate at which interest may be contracted for or taken is regulated and established. Rev. Sts. *c.* 35, §§ 1, 2. Gen. Sts. *c.* 53, §§ 3, 4.

In their negotiation with the plaintiff, he well knew that the defendants were not acting for themselves, but were acting exclusively in their official relation as officers and trustees of the association. Before the negotiation took place, he had become, as it was essential that for that purpose he should, a member of the company; and he had thus, in consideration of the privileges and advantages to which he thereupon became entitled, contracted and agreed that until its termination he would pay to the company, during the week next preceding every monthly meeting, two dollars as monthly dues for each and every share held by him, and also all the fines which should be duly imposed upon him. Arts. 1, 2, 10. It was after he had assumed this obligation, and contracted to make these payments, that as a member of the association, and in right of the nineteen shares which he had subscribed for and taken, he became a purchaser of its funds. That purchase did not relieve him from his preëxisting obligation ; but, upon realizing the money to which it entitled him, he was thereupon liable, according to the terms of his agreement, to pay interest upon it at the legal rate. It was also a part of the stipulations upon which the sale was made, that the purchaser, in addition to security for punctual payment of the interest of the money advanced to him, should give security also for the faithful performance of his promises previously made respecting fines and monthly dues. Upon consummation of the bargain respecting the sale of its funds, these claims of the company for interest on money advanced, and for monthly

dues as they should from time to time become payable, were and would remain entirely distinct and independent of each other. But the promises to pay, or the conveyances to secure the payment of such separate claims, might be contained, at the pleasure of the parties, in one and the same or in separate and different instruments. And it was undoubtedly the intention of the parties in this instance that the plaintiff by his bond should obligate himself to pay monthly dues upon his shares as well as interest upon the money which he received, and that by his mortgage deed he should give security for the performance of his promises in both particulars. When, therefore, he made it the condition of his bond that he should pay to the association until its termination $56.53 monthly, and on or before the first Monday in each month, he promised to pay no more for interest on the money advanced to him than interest at the rate established by law; for this sum of $56.53 consists first of $38, which is the amount of the monthly dues, and $18.53, which is the interest, computed at the legal rate, upon the money which he actually received from the company upon the purchase which he made. It is certain, therefore, that, in the instruments executed by the plaintiff and delivered to the defendants, there was no agreement or contract in violation of the statute, and no provision whatever for the payment of any excessive or usurious interest. Nor has there in fact been any such interest unlawfully received or taken, either by the defendants or by the company which they represent. For if the money realized from payments by the plaintiff and from the sale of the mortgaged premises exceeds the amount to which the company is entitled under the bond and the articles of association, the balance belongs and is to be accounted for to him. No part of such balance can be treated as interest, for it is not retained on that account, but upon claims of an entirely different character, the particulars of which are recited in the statement of facts.

The same conclusion results from the facts examined in a different aspect. The money which the plaintiff received was not a loan, but an advancement to him by the company, in pursuance

of due proceedings under and in accordance with the provisions of art. 14th of the articles of association. By that article it is provided that whenever " the funds of the association shall amount to the sum of five hundred dollars (one share) the same shall be put up to competition among the members," and he who offers the highest premium for the same shall be entitled to it, upon giving to the association security for the payment of his subscription — that is, his monthly dues, interest upon the money received, and the fines which shall be duly imposed upon him. But no provision is made, nor is any stipulation required, for the repayment of the principal, because that is not the end and purpose intended to be accomplished by the parties in the transaction. For although the proceeding is, in form, a sale or disposition of its funds, it is in fact a redemption by the company of the share or shares of the member who is nominally a purchaser of its money. The articles of association provide for the accumulation of a fund, by the voluntary contribution of its members, for their mutual benefit, which, when it becomes sufficient to pay to the holder of each unpurchased share the sum of five hundred dollars, is then to be distributed among them and the association is no longer to exist. Arts. 1, 2, 10. But by art. 14 provision is made by which a member may, whenever the company is in possession of funds enabling it to make advances, receive a stipulated sum of money instead of that share or proportion which he would be entitled to receive upon the termination of the association. What sum shall so be received in discharge and satisfaction of the ultimate estimated value of the share must necessarily be a subject of agreement between the parties, at the time the money is advanced; because, owing to a variety of causes which may tend on the one side to retard, or on the other to hasten, the accumulation of the proposed fund, rendering the period of the termination of the association a matter of entire uncertainty, the present value of the share, which is otherwise to be paid for upon the final distribution, cannot be calculated with any degree of exactness, or according to any absolute and fixed standard by which it may be measured. It is obvious that if all the members should punctually pay

their monthly dues, no one incurring at any time any fine or forfeiture, they would all contribute equally, in proportion to their respective shares, to the common fund finally to be divided; and consequently that any one of them who should receive an advance payment in redemption of his share at any agreed rate of discount, upon the condition of paying interest upon the sum so received until the close of the association, would as a matter of course be a loser; for in this case his contribution would be the same, but his receipts would be less than those of his associates. But the duration of time within which this fund shall be accumulated may be essentially diminished by the operation of various provisions in the articles of association respecting fines, forfeitures and discounts upon the redemption of shares. Arts. 10, 12, 13, 14, 15, 16, 24. And thus it may happen that by this shortening of the time during which the process of accumulation is going on, the money received by the member whose share is redeemed will be greater in amount than the aggregate of all the interest he pays upon it, added to the sum of all his contributions in monthly dues or otherwise, to the fund. Even therefore if such contributions by way of monthly dues could be considered as a substantial repayment of the principal advanced, it would be entirely uncertain, at the time of the advancement, what sum including interest would ultimately prove to be required in fulfilment of the contract, to be paid upon it; for this must depend upon the duration and continuance of the association and the success of its operations, which are contingencies beyond the reach of exact or accurate calculation. And since it cannot when the share is redeemed and the money is thus advanced be foreseen, by reason of these contingencies, which of the parties will ultimately gain the advantage by the transaction, it certainly cannot be said that their contract is in effect an agreement for the reservation, payment or taking of interest at an excessive or unlawful rate. But as the member whose share is redeemed may by the operation of these contingent causes be the gainer, and as he is by the terms of the contract to pay interest upon all the money which he receives until the termination of the association, it is obvious that a portion

of the principal advanced is put at hazard.   So far as this does or may occur, the redemption by the company of a share of one of its members resembles and is in some degree analogous to those contracts which are held not to be usurious although con taining stipulations for the payment of extra interest, because the principal is put at hazard by being made to depend upon contingent or fortuitous events, as in the cases of bottomry and respondentia, or loans on post obit bonds and the like.  2 Parsons on Con. 415.   *Thorndike* v. *Stone,* 11 Pick. 183.

It is apparent from these considerations that whether a member of a fund and loan association, constituted in the manner and having as the basis of its organization rules and articles similar to the one now before us, will in any particular instance gain or lose upon the redemption of his share, must at the time of the transaction be mere matter of speculation or conjecture.   That the prospect of gain may prove illusory and the speculation disastrous, may not perhaps, in view of the somewhat complicated provisions introduced into the articles of association, seem to be improbable.   Such certainly was the result in the present case, in which the money actually received from the plaintiff and from the sale of his property mortgaged as security, is equivalent to the principal advanced, with interest at the rate of eighteen or twenty per cent. per annum upon it, if the company is really entitled to hold all they have received in satisfaction of lawful claims.   But the parties had a right to make the share or interest of the plaintiff in the accumulating fund of the company a subject of negotiation and of bargain and sale, and having fairly entered into a contract in relation to it, they are bound by its stipulations, although it proves in the end to be specially disadvantageous to one of them.   This does not make the contract usurious.   *Merrill* v. *McIntire,* 13 Gray, 157.

From the provisions of art. 18 of the articles of association it also results that the contract between the plaintiff and the defendants was not usurious.   By those provisions, the plaintiff as mortgagor has a right to redeem his mortgaged estate by the payment of what is actually due to the company for whose benefit it is held by the trustees to whom the conveyance

in mortgage is made. In the case of *Parker* v. *Bigelow,* 15 Gray,    , it was determined under articles similar to those now before us, that the mortgagor might apply to the payment of the debt secured by the mortgage all the sums he had paid as monthly dues, and be entitled to redeem upon payment of the balance of the sum advanced to him with simple interest added to it. This precludes the mortgagee from the right or the power of exacting the payment of a greater rate of interest than that established by law.*

Finally, the transaction between the parties cannot be deemed to embrace an agreement between them for the reservation or payment of usurious interest, because it was a dealing between them as partners in relation to a partnership fund in which they had a common interest. They all participated, in proportion to their respective rights or number of shares in the company respectively subscribed for and taken, in the consequences resulting from the transaction. To this extent they severally were benefited by the gain, or suffer by the loss, resulting from it. In such case there can be no violation of the statute regulating the rate of interest. This principle has been recognized and affirmed by courts of the highest authority. In the case of *Silver* v. *Barnes,* 8 Scott, 300, it was determined that the purchase by a member of a "Benefit Society" organized for purposes and upon articles, rules and by-laws very similar to those contained in the articles of association under our present consideration, of £80 part of its funds at a premium of £15 did not make the contract usurious. Chief Justice Tindal said the money which was so received was not the common case of a loan, but was a mere advance or allotment of a portion of the partnership fund in which the defendant had an interest in common with the other members of the society, and therefore that the contract was lawful and must be enforced. He referred, in

---

* As to incorporated loan and fund associations, see Gen. Sts. *c.* 59. By § 4 it is required that all payments of principal shall be deducted as often as once in two years and the interest correspondingly reduced.

stating the opinion of the court, to a former case in which the same doctrine had been affirmed.

For these reasons we are of opinion that the contract cannot be adjudged to have been usurious, and therefore in pursuance of the agreement of the parties judgment must be entered for the defendants.